FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 APR -4 PM 4: 04

U.S. DISTRICT COURT
N.D. OF ALABAMA

------------------------------------------------------------x

Prewitt Enterprises, Inc., on its own behalf
and on behalf of all others similarly situated,

                          Plaintiff,

v.

Organization of Petroleum Exporting Countries,

                          Defendant.

------------------------------------------------------------x

CV-00-B-0865-S

Civil Action No. _____

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

       Plaintiff, by and through its undersigned attorneys, brings this action on behalf of itself

and all others similarly situated for equitable relief under the antitrust laws of the United States

against the above-named defendant, demanding a trial by jury. For its Complaint against

defendant, plaintiff alleges the following:

## I. NATURE OF THE CASE

       1.     This case arises out of a long-running international conspiracy coordinated and

implemented by the Organization of Petroleum Exporting Countries ("OPEC"), the primary

elements of which are agreed limits on the production and export of oil produced by OPEC's

members, who together control the majority of the world's oil resources, including more than

three-quarters of the world's proven recoverable crude oil reserves and more than half of world

oil exports. The admitted purpose and effect of such limits is to fix, raise and stabilize world oil prices above competitive levels, thus affecting the prices of oil and refined oil products in the United States.

2.      The prices of oil and refined oil products are determined by the forces of supply and demand. Production increases or decreases by oil producers cause and determine changes in the prices of oil and refined oil products in the United States, including gasoline sold at the pump.

3.      This case concerns the impact on U.S. trade and commerce of certain production cuts agreed to in March 1999; and implemented and enforced by OPEC throughout that period and continuing at present.

4.      As is well known, certain OPEC members and others in coordination with OPEC reduced their production levels between March and July 1998 in amounts totaling approximately 3.1 million barrels per day for the purpose of restricting exports and causing an increase in prices on world oil markets. However, because there remained a substantial supply of oil, those production cuts did not immediately achieve their intended result.

5.      Accordingly, on March 23, 1999 OPEC publicly announced that its members had entered into a one-year agreement to **further** cut their oil production. The material terms of the agreement were published on the world wide web, including specific barrel-per-day-limits on each member's oil production. Thus, OPEC agreed to make further reductions in the production of its member countries (excluding Iraq), fixing individual output levels as follows:

| Production | (barrels/day) |
|---|---|
| Algeria | 731,000 |
| Indonesia | 1,187,000 |
| Islamic Republic of Iran | 3,359,000 |
| Kuwait | 1,836,000 |
| Libya | 1,227,000 |
| Nigeria | 1,885,000 |
| Qatar | 593,000 |
| Saudi Arabia | 7,438,000 |
| United Arab Emirates | 2,000,000 |
| Venezuela | 2,720,000 |
| Total | 22,976,000 |

See www.opec.org/pr299.htm.

6.     Presumably tempted by the prospect of increased, albeit illegal, profits, non-OPEC members Mexico, Norway, the Sultanate of Oman and the Russian Federation agreed and conspired with OPEC to reduce their own production and export levels with cuts of 125,000, 100,000, 63,000 and 100,000 barrels per day, respectively.

7.     The resulting total of OPEC and co-conspirator production cuts when added to the 1998 cuts exceeded 5 million barrels per day.

8.     OPEC's then-President, Dr. Youcef Yousfi of Algeria, trumpeted the agreement as "beyond expectations" and giving "reason to believe that we will soon see stability returning

to the market, ***with prices rebounding to acceptable levels....***"  Opening Address to the 107[th] Meeting of the OPEC Conference, www.opec.org/pr199.htm.

       9.     Dr. Yousfi was not disappointed:  OPEC successfully enforced the March 1999 price-fixing agreement over the course of the next year and watched as oil prices rocketed to over \$30 per barrel.

      10.    At the same time, and as a result of defendant's illegal conduct, domestic oil inventories in the United States (excluding the nation's Strategic Petroleum Reserve) dropped severely, while the prices of vital commodities such as heating oil and gasoline rose to levels not seen since the Gulf War.

      11.    On March 27, 2000, OPEC met again in Vienna to evaluate and enforce its price-fixing agreements.  Apparently satisfied that they had raised oil prices to a satisfactory level without causing any reduction in demand, on March 29, 2000, OPEC announced yet another illegal agreement, this time to increase production modestly with the purpose and effect of stabilizing oil prices at the now-increased levels.

      12.    The foregoing agreements constitute transparent and per se violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and § 16 of the Clayton Act, 15 U.S.C. § 26.  The OPEC agreements are illegal and should be declared to be so.  Further, the implementation of such agreements should be enjoined and the Court should grant other appropriate equitable relief. Absent such relief, U.S. commerce will continue to suffer at the whims of OPEC, thus frustrating the Sherman Act and making a mockery of its role as the Magna Carta of our economic freedom.

-4-

## II. JURISDICTION AND VENUE

13.     Plaintiff brings this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, which permits any person, including indirect purchasers, damaged by any violation of the antitrust laws to bring suit in any court of the United States having jurisdiction over the parties for such equitable relief as the Court may declare just and proper, and to recover the costs of suit, including reasonable attorneys' fees, against OPEC for the injuries sustained by plaintiff by reason of OPEC's violations of the Sherman Act.

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 22 and 26.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

16.     Jurisdiction over OPEC comports with the United States Constitution, 15 U.S.C. §§ 22 and 26, 28 U.S.C. § 1331, and the Alabama long-arm statute.

## III. PARTIES

17.     Plaintiff Prewitt Enterprises, Inc. ("Prewitt Enterprises") is an Alabama corporation with its principal place of business in Birmingham, Alabama.  Prewitt Enterprises purchases substantial quantities of gasoline for resale to the public at its gasoline station.  As a result of OPEC's illegal conduct, Prewitt Enterprises's acquisition and inventory costs have risen dramatically.

18.     Defendant OPEC is an organization formed in Baghdad, Iraq in 1960 with its principal place of business at Obere Donaustrasse 93, A-1020, Vienna, Austria.  OPEC's current members are Iraq, the Socialist People's Libyan Arab Jamahiriya, the Islamic Republic of Iran, Saudi Arabia, the United Arab Emirates, Qatar, Kuwait, Algeria, Nigeria, Indonesia and

Venezuela. OPEC itself, however, is neither a foreign state nor an agency or instrumentality of a foreign state, as defined in 28 U.S.C. §§ 1602 *et seq.*

19.    OPEC's principal activity is to coordinate the negotiation, execution and implementation of illegal price-fixing agreements by its members. In order to accomplish this illegal purpose, OPEC co-ordinates and unifies the petroleum policies of its member countries. As relevant here, such activities include illegal price-fixing which is having a substantial and adverse impact on United States commerce.

20.    The acts charged in this Complaint as having been done by OPEC were authorized, ordered or done by its officers, agents, members, employees, or representatives, while actively engaged in OPEC's business and affairs.

## IV. CO-CONSPIRATORS

21.    Various other persons, firms, corporations and entities participated as co-conspirators with OPEC and performed acts and made statements in furtherance of the conspiracies and other acts complained of herein.

## V. CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action on behalf of itself, and under Rule 23(b)(2), of the Federal Rules of Civil Procedure, as representative of a class (the "class" or "plaintiff class") defined as: all persons or entities who indirectly purchased petroleum or petroleum products in the United States from March 1998 to the present. The class of indirect purchasers of these products spans the entire citizenry of the United States. Excluded from the class are all governmental entities, OPEC and its co-conspirators, and all judicial officers of the United States.

23.     Members of the class are numerous and joinder is impracticable.

24.     Plaintiff's claims are typical of the members of the class.

25.     Plaintiff will fairly and adequately protect and represent the interests of the plaintiff class.

26.     Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action and antitrust litigation.

27.     There are questions of law and fact common to the class, including:

(a)     whether OPEC and its co-conspirators agreed and conspired to fix, maintain, or stabilize prices of oil on the world markets;

(b)     the existence and duration of the horizontal agreements alleged in this Complaint to fix, maintain, or stabilize prices of oil on the world markets; and

(c)     whether OPEC's conduct caused or threatens to cause injury to the business or property of plaintiff and the plaintiff class; and, if so, the appropriate form(s) of equitable and injunctive relief.

28.     Class action treatment is appropriate because OPEC has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## VI. INJURY TO TRADE AND COMMERCE AND THE CLASS

29.     Petroleum is the engine of modern commerce and impacts the price and availability of a vast array of products sold in the United States.

30.     OPEC's members control over 75% of the world's proven oil reserves.

31.     OPEC's members produce over 40% of the world's oil.  More importantly, the oil exports of OPEC's members represent about 60% of the oil traded internationally.

32.     OPEC decisions concerning oil production, particularly those reducing or increasing production and exports, thus have a strong if not controlling effect on oil prices worldwide.

33.     The U.S. market for oil and oil products is both vast and intertwined with virtually all aspects of U.S. commerce.

34.     OPEC's illegal agreements have had a substantial and adverse impact on U.S. trade and commerce and threaten to continue doing so; indeed, it is difficult to imagine a comparable impact of illegal agreements in any other industry.

35.     During the period of this Complaint,  the conduct of OPEC and its co-conspirators has taken place in and affected the interstate and foreign trade and commerce of the United States.

36.     The conduct of defendant and its co-conspirators has directly, substantially and foreseeably restrained such trade and commerce.

37.     Due to OPEC's price fixing activity, the prices for oil and oil products have increased.  These price increases would not have occurred or continued but for such activities.

38.     Plaintiff and members of the class purchased petroleum or petroleum products at prices higher than they would have been but for OPEC's illegal conduct and, as a consequence, have sustained injury to their business and property.

## VI.  PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays:

A.      that the Court determine that this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B.      that the unlawful combination and conspiracy alleged herein be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act and Section 16 of the Clayton Act;

C.      that OPEC be enjoined from continuing and implementing the unlawful combination and conspiracy alleged herein and otherwise from acting in restraint of United States trade and commerce;

D.      that plaintiff and the plaintiff class recover their costs of this suit, including reasonable attorneys' fees, as provided by law; and

E.      that plaintiff and the plaintiff class be granted such other, further and different equitable and injunctive relief as the nature of the case may require or as may be deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of

Civil Procedure, of all issues triable of right by a jury.

Dated this 4th day of April 2000

Respectfully submitted,

Michael Straus
V. Gerald Johnson
Susan M. Donovan
BAINBRIDGE & STRAUS, LLP
2210 Second Avenue North
Birmingham, AL  35203
Tel: (205) 324-3800
Fax: (205) 324-3996

David Boies
BAINBRIDGE & STRAUS, LLP
10513  Braddock Road
Fairfax, Virginia 22032
Tel: (703) 764-8700
Fax: (703) 764-8704

Attorneys for Plaintiff and the Class

**PLEASE SERVE DEFENDANT BY REGISTERED MAIL, RETURN RECEIPT
REQUESTED.**